## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JOSE ANTONIO AROCHI | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:18-cv-02266 (APM) |
| | ) | |
| NOVAK DRUCE CONNOLLY BOVE | ) | |
| + QUIGG, LLP, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## FIRST AMENDED COMPLAINT

(Action for Damages for Breach of Contract, D.C. Wage Payment and Collection Law Violations, Fraud, Unjust Enrichment, De Facto Merger and Successor Liability, and Injunctive Relief)

## PRELIMINARY STATEMENT

1.     Plaintiff brings this suit alleging common law and statutory claims under the D.C. Wage Protection and Collection Law ("DCWPCL"), *as amended* by the District of Columbia Wage Theft Prevention Act of 2014, D.C. Code § 32-1301 *et seq.*  Under the DCWPCL, Mr. Arochi has sued the employer Novak Druce Connolly Bove + Quigg LLP ("Novak-Druce"), and the employer equity partners of "Novak-Druce," who are jointly and severally liable for the DCWPCL wage violations: Mr. Novak, Mr. Druce, Mr. Amernick, and Mr. Todd. They are sued as decision-makers, jointly and severally, and co-conspirators. Mr. Arochi has sued Polsinelli PC ("Polsinelli") which merged with and succeeded Novak-Druce in the acquisition of Novak-Druce's IP practice (including liability for the wages stolen from Plaintiff).  Defendants Mr. Novak, Mr. Druce, Mr. Amernick and Mr. Todd moved their practices to Polsinelli, where they became shareholders and/or partners. Each of the Defendants retaliated against Mr. Arochi for his protected activities while seeking to enforce his rights under the DCWPCL. Mr. Arochi sues for Breach of Contract to recover unpaid wages owed pursuant to his employment contract of $127,928.50, and statutory liquidated damages of $383,785.50; compensatory damages in Tort for Fraud

of $1,000,000, and $10,000,000 for punitive damages; and compensatory damages for Retaliation of $250,000.   Plaintiff also seeks equitable relief for unjust enrichment, and a permanent injunction to protect him from continued retaliation.  Lastly, Plaintiff asks for the award of statutory mandated attorneys' fees based on the "Salazar Matrix," and litigation costs of any nature.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over Plaintiff's claims herein under 28 U.S.C. § 1332(a)(3) on the basis of diversity, as the action is between citizens of different states and of a foreign state, and the amount in controversy exceeds $75,000

3.      Venue is proper in the District of Columbia as a substantial part of the events giving rise to the claims occurred in the District of Columbia. D.C. 28 U.S.C. § 1391(a)(b).

4.      This Court has personal jurisdiction over each of the Defendants herein who are domiciled in, organized under the laws of, or who maintain his or its principal place of business in the District of Columbia as to the claims for relief stated herein. D.C. Code § 13-422.

5.      Under the D.C. Long Arm Statute, DC Code § 13-423, this Court has personal jurisdiction over each of the Defendant persons, whose acts directly or by an agent as to the claims for relief stated herein arose from the Defendants transacting business in the District of Columbia; contracting to supply services in the District of Columbia, causing tortuous injury in the District of Columbia by acts or omissions outside the District  of Columbia., where such persons regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods use or consumed, services rendered, in the District of Columbia.

## PARTIES

6.      Plaintiff Jose Antonio Arochi is a citizen of the United Mexican States, and resides in Mexico City, Mexico. At all times relevant to this First Amended Complaint, until March 11, 2016, Mr. Arochi was employed as a Foreign Associate, working in the Washington office of Novak-Druce under a TN1-NAFTA Visa.

7.     Defendant Novak-Druce is a limited liability partnership organized under Texas law, with its principal place business in Houston, Texas.  In January, 2013, Novak-Druce was formed from a merger of Novak Druce + Quigg LLP, and Connolly Bove Lodge & Hutz. On March 1, 2016, Novak-Druce ceased operating as a law firm, but has continued to exist as a legal entity under Texas law, and based on information and belief, is transacting business in the District of Columbia and is authorized to do business in the District of Columbia by the D.C. Department of Regulatory Affairs.

8.     Defendant Burton Amernick is a citizen of the State of Maryland.  At all times relevant hereto, until March 1, 2016, Mr. Amernick was Managing Partner in Novak-Druce's District of Columbia office, and he was Mr. Arochi's immediate supervisor. On March 1, 2016, Mr. Amernick went to work for Polsinelli as an equity partner in its Washington, D.C. office.  He is a member of the Bar of the District of Columbia.

9.     Defendant Tracey W. Druce is a citizen of the State of Texas, and he maintains an owner-occupied legal residence in the Commonwealth of Virginia at 1496 Evans Farm Drive, McLean, VA  22101-5653.  At all times relevant herein, and until March 1, 2016, Mr. Druce maintained an office with his nameplate mounted on the wall in the Washington office of Novak-Druce. He was a Class B Equity Partner, Member of the Executive Committee and Executive Director of Novak-Druce. On March 1, 2016, Mr. Druce moved his practice to Polsinelli, based in its Houston office. He is an equity partner in Polsinelli, and Vice Chair of the Intellectual Property Department. Mr. Druce is a member of the Bar of the District of Columbia, and based on information and belief, he practices law and transacts other business in the District of Columbia, and continues to be a partner of Novak-Druce.

10.     Defendant Gregory V. Novak is a citizen of the State of Texas, and he maintains an owner-occupied legal residence in the Commonwealth of Virginia at 1496 Evans Farm Drive, McLean, VA 22101-5653.  At all times relevant herein, and until March 1, 2016, Mr. Novak maintained an office with his nameplate mounted on the wall in the Washington office of Novak-Druce. He was a Class B Equity Partner, Managing Partner and Chief Executive Officer of Novak-Druce. On March 1, 2016, Mr.

Novak went to work for Polsinelli, based in its Houston office. He is as an equity partner of Polsinelli, and Practice Leader in its Intellectual Property Department. Mr. Novak is a member of the Bar of the District of Columbia, and based on information and belief, he practices law and transacts other business in the District of Columbia, and continues to be a partner of Novak-Druce.

11.     Defendant Matt A. Todd is a citizen of the State of Texas. At all times relevant herein, and until March 1, 2016, Mr. Todd was a Class A Equity Partner and the firm's Administrative Partner, and was based in the Houston office of Novak-Druce. On March 1, 2016, Mr. Todd went to work for Polsinelli in its Houston office. He is as an equity partner in Polsinelli, and a Member of its Intellectual Property Department. Mr. Todd is a member of the Bar of the District of Columbia, and based on information and belief, he practices law and other transacts business in the District of Columbia.

12.     Defendant Polsinelli is a Kansas City, Missouri-based law firm.  It has 22 offices across the country and in Washington, and employs 850 attorneys. On March 1, 2016, Polsinelli engaged in an acquisition transaction with Novak-Druce, whereby the bulk of its equity partners and a total of 50 Novak-Druce lawyers went to work for Polsinelli.  Polsinelli was the successor to Novak Druce in a de facto merger of the two firms.

## FACTUAL AND LEGAL ALLEGATIONS

Background

13.     In 2010, Mr. Arochi obtained an LL.B. degree from Universidad Iberoamericana in Mexico City, and in May 2012, he obtained an LL.M. degree in Intellectual Property from George Washington University Law School, while residing in the District of Columbia.

14.     Mr. Arochi worked for Novak-Druce in its Washington office from April to August 2013; he worked in its Houston office from September 2013 to May 2014; and returned to work in the Washington office from June 2014 to March 11, 2016, when he left the firm. During his employment with Novak-Druce, Mr. Arochi's paychecks were issued by the Washington office, and drawn against its bank accounts in the District of Columbia, and were made subject to withholding for District of Columbia and

paid income taxes to the District of Columbia, and his employment records would be available electronically in the District of Columbia.

15.     Under the terms of Mr. Arochi's employment agreement of March 28, 2013, which was signed in the District of Columbia by Mr. Todd –as Administrative Partner-- his starting annual salary was $48,000.  In addition, he was to receive a 20% commission on legal fees he generated for the firm that exceeded $20,000, which commissions were due to be paid in the nearest monthly pay period.

Citibank Demand Line of Credit

16.     On January 1, 2013, Novak-Druce entered into a Loan Agreement with Citibank N.A. based on a promissory note for a Demand Line of Credit of $10,000,000 (also referred to as "Loan").  Mr. Novak and Mr. Druce executed the Loan Agreement on behalf of Novak-Druce, and as joint and several Guarantors on the Loan, and they signed the Promissory Note. The Loan coincided with the 2013 merger.

17.     On or about March 31, 2015, Novak-Druce, and Guarantors Mr. Novak and Mr. Druce, requested Citibank to forebear from taking collection actions on the $10,000,000 Demand Line of Credit because Novak-Druce had Defaulted under the terms of the Loan Agreement, and for that purpose the parties entered into the First Forbearance Agreement.

18.     On June 30, 2015, Novak-Druce and Citibank, and Mr. Novak and Mr. Druce as Guarantors, entered into a second Forbearance Agreement because Novak-Druce had again Defaulted under the terms of the Loan Agreement. In consideration for forbearance, Citibank restricted the total annual distributions to partners to less than $2,200,000.

19.     In July 30, 2015, Citibank extended the June 30, 2015, Forbearance Agreement, but Novak-Druce remained in Default.

20.     The Loan Agreement provided that it shall be an event of Default under the Loan Agreement, if Novak-Druce "shall dissolve or otherwise discontinue the practice of law."

21.     On or about March 1, 2016, Novak-Druce advised Citibank that it had ceased operating as a law firm, and that it was winding down its affairs, and dissolving. Novak-Druce further advised that as a result of a merger transaction with Polsinelli, the bulk of its equity partners, including Mr.

Novak, Mr. Druce, and Mr. Todd, departed Novak-Druce to work for Polsinelli. Each of

the March 1 2016, events constituted Default under the Loan Documents.

22.     By letter dated March 3, 2016, Citibank notified Novak-Druce, and Mr. Novak and Mr.

Druce, as individual Guarantors of the Loan, that the bank declared Default, and demanded immediate

repayment in full of the sum due of $9,249,998, and other sums due under its line of credit.

23.     As of March 1, 2016, and continuing thereafter, Novak-Druce collected accounts

receivables from its clients, some of which were deposited in a "blocked deposit account and/or a certain

cash concentration account" Novak-Druce had maintained at Citibank. All sums contained in the account

had been pledged by Novak-Druce to Citibank as collateral for the repayment of the Loan. From time to

time, Citibank applied funds in that account to offset in reduction of the Loan indebtedness.

24.     By letter dated January 27, 2017, while funds in the account were being offset against

the Loan, Citibank made legal demand on Mr. Novak and Mr. Druce, as Guarantors for payment of the

outstanding indebtedness that had been reduced since March 2016 by Novak-Druce receivables to

$3,200,000.

25.     By letter dated February 2, 2017, addressed to Guarantors Mr. Novak and Mr. Druce,

Citibank reiterated its demand for payment by Mr. Novak and Mr. Druce as Guarantors for the

outstanding balance due under the Note in the sum of $3,200,000, together with accrued interest.

26.     By letter dated July 27, 2017, Citibank again reiterated its demand for payment in full by

the Guarantors, jointly and severally, of the outstanding balance under the Note of $3,200,000.00,

together with interest.

Citibank Sues Mr. Novak and Mr. Druce

27.     On August 8, 2017, Citibank filed suit against Mr. Novak and Mr. Druce, jointly and

severally, as Guarantors of the Loan in this Court in *Citibank N.A. v.  Gregory V. Novak and Tracy W.*

*Druce*, No. 1:17-cv-01593 (D.D.C. 2017) (APM)

28.     On February 1, 2008, in a published opinion, this Count denied Mr. Novak and Mr.

Druce's motion to dismiss and/or move the lawsuit to the U.S. District Court for the Southern

6

District of Texas, Houston Division under the transfer statute 28 U.S.C. § 1404(a). The Court ruled that the forum selection clause in the Loan documents clearly required that the lawsuit be heard in the District of Columbia, and that the agreements at issue be interpreted under the laws of the District of Columbia, finding that the motion had no merit.

29.     On March 14, 2018, Citibank and Mr. Novak and Mr. Druce moved to extend the deadline for defendants to file an Answer to allow the parties to finalize and document a settlement agreement, and on March 28, 2018, this Court dismissed the suit on joint stipulation of the parties.

Mr. Arochis's Compensation Terms with Defendants, November, 2014 to April, 2015

30.      In November 2014, while working in the Washington office, Mr. Arochi secured a lucrative client for the firm: Veteria Labs, S.A. De C.V., which was based in Mexico City, Mexico. Plaintiff was in all respects the sole procuring cause for Veteria's retention of the firm.  Under the terms of his employment agreement, Mr. Arochi was entitled to commissions which vested when fees were paid to the firm. Mr. Druce told Mr. Arochi at the time that he had "hit a home run."

31.     During 2013 and 2014, Mr. Arochi had continued on an elevated trajectory of success, developing clients for Novak-Druce, boosting its profits, and raising the firm's profile in Mexico and Latin America. During the course of his employment with Novak-Druce, Plaintiff secured billings of $1,500,000 in new business for the firm.

32.     Beginning in 2014, the firm's financial stability declined, and it exhausted $9,200,000 of the Citibank line of credit under the Loan.  Partners and associates began leaving the firm.

33.     During the good times leading up the multiple defaults in 2015, Mr. Novak and Mr. Druce had led a life of extravagance.  Based on information and belief, Mr. Novak purchased a new Land Rover with the firm's credit card, and they bought other expensive cars, an apartment in Los Angeles, at the Ritz-Carlton Residences,  two houses in the River Oak section of Houston, and  a luxury home in a gated community in McLean Virginia.

34.     Mr. Arochi's starting salary in April 2013, was $48,000, and in mid-2014 it was raised to $145,000.  Plaintiff's salary remained at that level throughout his employment in the firm's Washington, D.C. office, until April, 2015.

April 2015 Employment Agreement Modification

35.     In April 2015, Mr. Amernick, the Managing Partner, and Mr. Vincent DeLuca, an equity partner in the Washington office, met with Mr. Arochi in his office in Washington, D.C. to discuss the terms of his compensation. They proposed, and he agreed, to eliminate his annual salary of $145,000 and instead to compensate him based on commissions of 20% for every dollar of fee collections he generated for the firm.  The meeting lasted for 20 minutes. Amernick and Todd emphasized how valuable he was to the firm, and how much they wanted him to remain with the firm.

36.     The firm highly regarded Mr. Arochi was a rainmaker with enormous promise.

37.     Under the commissions-only agreement, Mr. Arochi's earnings declined, but for the Veteria client, he was paid: May 2015, $5,828.64; June 2015, $2,230.33; July 2015, $2,868.32; August 2015, $8,263.74; September 2015, $8,529.32; and October 2015, $587.05.

38.     Mr. Arochi did not receive a paycheck from November 2015 to March 11, 2016.  He received no compensation because the firm refused to pay him his earnings of $127,929.50, based on fees collected in September 2015, when his rights to a commission vested.

39.     When Mr. Amernick and Mr. Todd lured Mr. Arochi into accepting the commissions-only arrangement, they were encouraging him to extend credit to the firm.  They had a duty to disclose that the firm was in default on the $10,000,000 Citibank note and unable to pay that loan, but they did not so disclose.

40.     Mr. Novak contacted Mr. Arochi in September 2015, regarding the non-payment of fees by Veteria.  He urged Mr. Mr. Arochi to intervene, to threaten Veteria with a lawsuit for non-payment, and he encouraged Mr. Arochi to meet with Veteria in Mexico City. Mr. Arochi traveled from

8

Washington, D.C.  to Mexico City at his own expense, met with the client, and secured its immediate payment of the bill of $639,647.50, plus interest charges.

41.     Mr. Novak praised Mr. Arochi for the results he had obtained with Veteria and led Mr. Arochi to believe that he would be paid the agreed-upon compensation, which was $127,929.50.

42.     When Mr. Arochi received his October paycheck, it did not include the $127,929.50 he earned as compensation as of October 2015.

43.     In an email of October, 2015, to Mr. Arochi, Mr. Novak acknowledged that the firm owed him $127,929.50, that Mr. Arochi's legal right to this compensation vested on receipt by the firm of the money, and he was to be paid on the next pay period, in the third week of October.

44.     By the time, Mr. Arochi left the firm on March 11, 2016, because he had had no income for months, and specifically did not receive the $127,929.50, he had accumulated debts of $65,000, consisting of living expenses and student loan obligations.

45.     Novak-Druce has failed to pay Mr. Arochi $127,929.50 since October 2015.

46.     Mr. Arochi made numerous requests, always with respect, for the commissions, of the administrative official in the Washington office, to Mr. Novak and to Mr. Druce.  Never once was he told that he had not earned the commission, or that the commission would not be paid. He was either ignored, misled or fed the song and dance that he would be paid and should be patient.

47.     Mr. Arochi sent emails to Mr. Novak while employed with the firm and up through September 2016.  For example, in an email of March 17, 2016, Mr. Arochi stated: "I am writing to follow up on my multiple previous emails regarding my payments of the agreed-upon commission to the Veteria matter," and "I appreciate your statements in the past that the firm would make these payments to resolve this unpaid amount, but it's now been more than seven months," and "let me know no later than Monday, March 21st for the firms' payment plan."  He stated in an email of June 5, 2016, to Mr. Novak: "It has been almost a year since all of the Veteria issue happened and ever though there has been promises of resolving my issue nothing has been resolved."  On July 29, 2016, Mr. Novak in an email to Mr. Arochi, in his last communication in the matter, stated: "Jose-not ignoring, but we are still working on a workable

9

solution. There are moving pieces on this side which I am working on."  Mr. Novak's promises proved to be utterly false.

48.     Mr. Arochi was told in one occasion in later 2015 by the Washington office management which the firm had put a hold on his check.

2016 Delaware Lawsuit Against Novak-Druce for Unpaid Wages

49.     On December 29, 2016, Mr. Curt Lambert and Mr. Zhum Lu, two former attorneys that had been employed by Novak-Druce, sued Novak-Druce for unpaid wages:  Lambert v. Novak Druce Connolly Bove + Quigg, LLP, Superior Court for the State of Delaware, C.A. No.: N16C-12-412 (EMD)

50.     Lambert, a former associate, sued Novak-Druce for failure to pay wages earned and due that the firm had acknowledged as owing since December 2015. Novak-Druce had promised Lambert that it would pay his wage of $15,389.10 for months. Mr. Lu was owed $20,920.46.  The Superior Court Judge issued a scathing opinion, dated September 25, 2017, wherein he chastised both Novak-Druce and Polsinelli for obstructing the litigation, dodging service of process and engaging in abusive tactics. As a result, the Court entered judgment in the fully amount of the wages owed for Mr. Lambert and Mr. Lu.

BMO Harris Bank Sues Nova-Druce

51.     On January 30, 2017, BMO Harris Bank N.A. ("Harris Bank") sued Novak-Druce: BMO Harris Bank N.A. v. Novak Druce Connolly Bove + Quigg LLP, US District Court for the Southern District of Texas, Houston, Divisions, Civ. Action No. 4:17-cv-0166.  Novak-Druce had entered into a Dinners Club Commercial Card Agreement with Citibank, which had assigned the agreement to Harris Bank. Novak-Druce failed to make payments required by the agreement, and it exceeded the spending limits of $500,000.

52.     By January 27, 2017, the outstanding balance due was $566,390.38., of which $66,390.38 had exceeded the card limits. Novak-Druce had racked up thousands of dollars of charges for restaurant meals, but continued using the card nonetheless.  On June 13, 2017, the bank made demand for the amount owed of $566,390.38.

53.     Harris Bank filed suit in the federal court in Houston because Novak-Druce had failed and refused to pay, despite having no meritorious defense.

54.     Novak-Druce had stopped making payments on the debt to the bank in April 2016, even while the firm continued to incur restaurant bills while the firm was in dissolution and was refusing to pay wages to Mr. Arochi.

55.     On March 1, 2019, five months after Mr. Arochi filed this lawsuit, Novak-Druce settled with Harris Bank.

2015 California Lawsuit Against Novak-Druce for Unpaid Wages

56.     On August 14, 2015, Marcus Hall and Dean Morehouse, former salaried partners of Novak-Druce filed suit in *Hall v. Novak Druce Connolly Bove + Quigg LLC,* CGC-15-54783, Superior Court of the State of California, for the County of San Francisco (August 14, 2015).

57.     Novak-Druce had failed and refused to pay Mr. Hall and Mr. Morehouse wages they had earned in 2014 and 2015 under their employment agreements, which had been signed by Mr. Todd as Administrative Partner.

58.     Novak-Druce appeared through counsel and settled the claims. On June 29, 2017, the Court entered judgment for Mr. Hall of $250,000, and for Mr. Morehouse of $150,000, and the Court awarded plaintiffs $100,000 in attorney fees. Novak-Druce, though it was represented by counsel, has refused to pay the judgments.

Novak-Druce Filed Preemptive Complaint for Declaratory Judgement

59.     For months, Mr. Arochi, represented by counsel, advised counsel for Defendants in this matter, that under the circumstances, suit had to be filed and would be filed on September 28, 2018, in federal court in Washington, D.C.

60.     Without warning, and to deter Mr. Arochi from enforcing his rights in Washington, D.C. where he had worked for Novak-Druce and where he had lived while working there, Novak Druce, Mr. Novak, Mr. Druce, Mr. Amernick and Mr. Todd filed a preemptive suit on September 27, 2018,.in the U.S. District Court for the Southern District of Texas, Houston

11

61.     Under the caption, *Novak, Druce, Connolly +Quigg LLP, Burton Amernick, Tracy Druce, Gregory Novak and Melvin "Matt" Todd v. Arochi*, Civ. Act. No. 4:18-cv-3490, Defendants in this action, (other than Polsinelli), filed a preemptive Complaint for Declaratory Judgment that mirrors the issues raised by Plaintiff's claims herein.  All of the plaintiffs in the Texas action are partners and/or shareholders in the Polsinelli firm, agents or employees of Polsinelli, and the complaint was signed and filed by a partner in the Polsinelli firm.  Polsinelli thereby ratified and endorsed the actions of the Houston plaintiffs.

Polsinelli Acquires Novak Druce

62.     Based on information and belief, Polsinelli and Novak-Druce were in merger talks in September and October 2015.

63.     Polsinelli acquired and otherwise succeeded to the assets of Novak-Druce, based on information and belief, under an agreement that took effect on March 1, 2016.

64.     Polsinelli acquired in a transaction the bulk of the Novak-Druce equity partners, and other attorneys. The total number of equity partners was 22 and the total number of attorneys was approximately 50 lawyers.

65.     Polsinelli acquired an immediate revenue stream from the Novak-Druce acquisition.

66.     One measure of value Novak-Druce to Polsinelli was a multiple of earnings.

67.     Polsinelli acquired the ongoing and future access to the contacts, referral services and clients of Novak-Druce existing clients.

68.     Novak-Druce conveyed to Polsinelli the professional goodwill of the equity partners.

69.     Polsinelli acquired the means of equity partners.

70.     Polsinelli acquired with the Novak-Druce business enterprise, good will, contacts, banking relationships, vendor relationships, lease opportunities and ability to generate cash.

71.     On information and belief, Polsinelli acquired certain unbilled time of Novak-Druce's equity partners and attorneys.

72.     Polsinelli acquired the knowledge, experience, skill, judgment, and reputation and essentially all professional goodwill of the Novak-Druce attorneys.

73.     Polsinelli acquired the personal and business relationships of the equity partners with the clients.

74.     Polsinelli acquired the prestige and market position of Novak-Druce to add to its existing IP practice that resulted in creating the fourth largest IP practice in the country.

75.     Based on information and belief, the transaction resulted in a de facto merger whereby Polsinelli became the successor to Novak-Druce, and was in substance a mere continuation or reincarnation of Novak-Druce. Based on information and belief, the transaction was made without sufficient consideration.

76.     Based on information and belief, within the context of the Polsinelli's IP practice there was a continuation of management and the transaction was structured in such a way that Polsinelli purchased the assets of Novak-Druce, and not its liabilities, which include liability for Mr. Arochi's wage.

## COUNT I

## D.C. WAGE PROTECTION AND COLLECTION LAW

(Novak-Druce, Mr. Novak, Mr. Druce, Mr. Amernick, Mr. Todd and Polsinelli)

77.     Plaintiff incorporates the foregoing paragraphs as if set forth in their entirety herein.

78.     For certain weeks herein during Mr. Arochi's employment, Novak-Druce failed and refused to pay him under the terms of his employment agreement of April 2015.

79.     The DCWPCL, D. C. Code §32-1301 defines "employer" to include individuals, partnerships and corporations employing any person in the District of Columbia.  Defendants Novak-Druce, Mr. Novak, Mr. Druce, Mr. Amernick and Mr. Todd employed Mr. Arochi in the District of Columbia and were his "employers" within the meaning of the Act.

80.     The DCWPCL, D.C. Code §32-1301(3), defines compensation in the form of commissions to be "wages" covered by the Act.

13

81.     Defendants Novak-Druce, Mr. Novak, Mr. Druce, Mr. Amernick and Mr. Todd failed and refused to pay to their employee, Mr. Arochi, the wages he had earned by the next regular pay day, in violation of the DCWCPA, D.C. Code §32-1302.

82.     Defendants Novak-Druce, Mr. Novak, Mr. Druce, Mr. Amernick and Mr. Todd failed and refused to pay wages to their employee, Mr. Arochi, upon discharge or termination of his employment, in violation of the DCWCPA, D.C. Code §32-1303.

83.     Because Defendants Novak-Druce, Mr. Novak, Mr. Druce, Mr. Amernick and Mr. Todd failed and refused to pay wages earned and due to their employee, Mr. Arochi, in violation of the DCWPCL, D.C. Code §32-1303(4), they are liable to pay him liquidated damages in an amount equal to treble the unpaid wages.

84.     Because Defendants Novak-Druce, Mr. Novak, Mr. Druce, Mr. Amernick and Mr. Todd failed and refused to pay wages earned and due to their employee, Mr. Arochi, all of them are guilty of a misdemeanor under the DCWPCL, D.C. Code §32-1307.

85.     Defendants Novak-Druce, Mr. Novak, Mr. Druce, Mr. Amernick and Mr. Todd are liable for reasonable attorneys' fees and all costs of litigation of any kind, and all back wages which had been denied Mr. Arochi.

86.     The Court shall, in addition to judgment for Mr. Arochi as prevailing party, enter judgment for each attorney representing Mr. Arochi as entitled to attorneys' fees calculated pursuant to the matrix approved in *Salazar v. District of Columbia*, 123 F. Supp. 2d 8 (D.C.C. 2000), and updated for current market rates for attorneys' services.

87.     Defendants Novak-Druce, Mr. Novak, Mr. Druce, Mr. Amernick and Mr. Todd are liable, jointly and severally, for all costs of depositions fees, witness fees, filing fees, juror fees, costs of collections and presenting evidence, and any costs associated with any judgment entered for violation of the DCWPCL. D.C. Code §32-1308(b)(3)

88.     The acts of the of Novak-Druce, Mr. Novak, Mr. Druce, Mr. Amernick and Mr. Todd, as described in the preceding statement of facts, were illegal, outrageous, wanton, and reckless and were taken in willful disregard of the rights of Mr. Arochi.

## COUNT II

## BREACH OF CONTRACT

(Novak-Druce)

89.     Plaintiff incorporates by reference the foregoing paragraphs as if set forth in their entirely herein.

90.     Mr. Arochi entered into a revised contract of employment with Novak-Druce in April 2015.

91.     Under the terms of that agreement, Novak-Druce was to pay Mr. Arochi wages he had earned that had vested in September 2015, and due as of the third week in October 2015.

92.     Novak-Druce breached the employment agreement when, pursuant thereto, it failed to pay Mr. Arochi $127,928.50 on his payday in October 2015.

93.     Novak-Druce has failed and refused to remedy its breach of the employment since that payday in October 2015.

94.     Novak-Druce has no defenses or setoffs it can claim against the amount due.

95.     Novak-Druce is liable to Mr. Arochi for contract damages in the amount of $127,928.50.

## COUNT III

## FRAUD

(Novak-Druce, Novak, Druce, Amernick and Todd)

96.     Plaintiff incorporates the foregoing paragraphs as if set further in their entirety herein.

97.     Defendants Novak-Druce, Mr. Novak, Mr. Druce, Mr. Amernick and Mr. Todd knowingly and intentionally made misrepresentations of material facts, and failed to disclose material facts, relating to the revised employment agreement of April 2015.

98.      Defendant Mr. Novak misrepresented to Mr. Arochi that if he obtained payment by Veteria of the outstanding bill by traveling to Mexico City at his own expense to meet with the client, that he would be compensated pursuant to his employment agreement at 20% of the amount paid by Veteria, when he had no intention whatsoever of honoring the agreement.

99.     Defendants Mr. Novak, acting with the intent to defraud Mr. Arochi, failed to disclose to him, that Mr. Novak and Mr. Druce had joint and several liability to Citibank under a Loan to Novak-Druce in excess of $9,200,000, and that the wage due him of $127,928.50 would be diverted to reducing their exposure on that debt.

100.     Defendants Novak-Druce, Mr. Novak and Mr. Druce made repeated false and fraudulent representations to Mr. Arochi that he would receive his wages when they were due, and after the due date, to deceive him and hide their use of his money for other purposes, to include paydown on the Citibank Loan, while they kept current in paying the partners' Diner's Club entertainment charges.

101.     Defendants Novak-Druce, Mr. Novak, Mr. Druce, Mr. Amernick and Mr. Todd had engaged in a pattern and practice of unlawfully diverting funds needed to pay employee salaries to pay other creditors, which resulted in lawsuits against the firm for unpaid wages.

102.     The acts of Defendants Novak-Druce, Mr. Novak, Mr. Druce, Mr. Amernick and Mr. Todd, as described in the preceding statement of facts, were outrageous, wanton, and reckless and were taken in willful disregard of the rights of Mr. Arochi.

**COUNT IV**

**(Retaliation in Violation of the DCWPCL)**

(Novak-Druce, Mr. Novak, Mr. Druce, Mr. Amernick, Mr. Todd and Polsinelli)

103.     Plaintiff incorporates the foregoing paragraphs as if set further in their entirety herein.

104.     Prior to filing this action, the parties herein had engaged in efforts to settle Mr. Arochi's claims. Polsinelli represented Defendants Novak-Druce, Mr. Novak, Mr. Druce, Mr. Amernick and Mr. Todd.  Polsinelli's own financial interests were, based on information and belief, inextricably intertwined with those of the Defendants.

105.     In the days leading up to filing the Complaint herein, Mr. Arochi's counsel reiterated the internal deadline established in light of the statute of limitations.  On September 25, 2018, Chuck Thompson, counsel from Polsinelli, representing the Novak-Druce defendants (his partners in Polsinelli), stated that Defendants Novak-Druce, Mr. Novak, Mr. Druce, Mr. Amernick and Mr. Todd, had vented to him about filing a preemptive suit for declaratory judgment in Houston, to seize venue away from the District of Columbia.

106.     Mr. Thompson told Plaintiff's attorneys that he considered that a stupid and ill-considered idea, and he had talked Defendants out of it.  Mr. Thompson said that he would try to get a significantly better settlement offer from Defendants before September 28,2018. He discouraged entering a tolling agreement, however, saying that the likelihood of suit would motivate Defendants to make a better settlement offer.  In the last communication with opposing counsel, Mr. Thompson stated that his clients would not file a preemptive suit, with knowledge that he was told that unless there was a settlement, Mr. Arochi would file suit on September 28, 2018, as previously stated.

107.     On September 27, 2018, Defendants Novak-Druce, Mr. Novak, Mr. Druce, Mr. Amernick and Mr. Todd, represented by Polsinelli, filed a Complaint for Declaratory Judgment in the U.S. District Court for the Southern District of Texas, Houston Division, on some of the issues raised herein. Mr. Arochi filed his original Complaint in this action on September 28, 2018, as he had stated he would.

108.     Defendants Novak-Druce, Mr. Novak, Mr. Druce, Mr. Amernick and Mr. Todd have engaged in a blatant effort to shop a friendly forum and one not convenient to Mr. Arochi and his attorney.

109.     Defendants Novak-Druce, Mr. Novak, Mr. Druce, Mr. Amernick, Mr. Todd, and Polsinelli have thereby engaged in unlawful retaliation against Plaintiff, because he was about to initiate a proceeding under the DCWPCL and otherwise exercised rights protected under that law.  Therefore, Defendants are liable to Mr. Arochi for violation of the anti-retaliation provisions of the DCWPCL. D.C. Code §32-1311.

110.     Mr. Arochi seeks a preliminary and permanent injunction  against Novak-Druce, Mr. Novak, Mr. Druce, Mr. Amernick and Mr. Todd, and Polsinelli, under the DCWPCL, D.C. Code §32-1311[c] enjoining them their unlawful conduct, assessment of civil penalty, awarding liquidated damages in an amount equal to the civil penalty, awarding front pay, lost compensation, costs and reasonable attorneys' fees and such other relief equitable relief as the court may deem appropriate.

## COUNT V

## SUCCESSOR LIABILITY

### (Polsinelli))

111.     Plaintiff incorporates the foregoing paragraphs as if set further in their entirety herein.

112.     Polsinelli is the successor in interest to Novak-Druce.

113.     The transaction of March 1, 2016, was a de facto merger of Polsinelli, which is a mere continuation and reincarnation of Novak-Druce.

114.     Based on formation and belief, the transaction was made without sufficient consideration, and resulted in Polsinelli farming the assets and leaving behind the liabilities.

115.    The transfer of Novak-Druce's IP practice to Polsinelli under the circumstances resulted in Polsinelli being the successor in interest to Novak-Druce.

## COUNT VI

### (Unjust Enrichment)

### (Novak-Druce)

116.     Plaintiff incorporates the foregoing paragraphs as if set further in their entirety herein.

117.    In 2015, Novak-Druce entered in to an agreement with Mr. Arochi, to pay him a commission only.

118.    Mr. Arochi conferred a benefit upon Novak-Druce by working as an attorney without being paid, and collecting fees owed to the firm.

119.    Mr. Arochi secured payment by Veteria of $639,642.48 in September 2915.

120.    Mr. Arochi was the procuring cause resulting in Veteria's retention of Novak-Druce.

121.    Novak-Druce, Mr. Novak, Mr. Druce, Mr. Amernick and Mr. Todd, as equity partners who had personal liability for the debts of Novak-Druce, diverted funds due Mr. Arochi, resulting in their unjust enrichment.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Arochi respectfully requests that the Court enter judgment as follows:

1.    Enter judgment for Mr. Arochi against Novak-Druce, Mr. Novak, Mr. Druce, Mr. Amernick and Mr. Todd, jointly and severally, and as co-conspirators for the claims alleged herein.

2.    Enter judgment for Mr. Arochi against Novak-Druce, Mr. Novak, Mr. Druce, Mr. Amernick and Mr. Todd for breach of contract.

3.    Enter judgment for Mr. Arochi against Novak-Druce, Mr. Novak, Mr. Druce, Mr. Amernick and Mr. Todd for unpaid wage of $127,928.50.

4.    Enter judgment for Mr. Arochi against Novak-Druce, Mr. Novak, Mr. Druce, Mr. Amernick and Mr. Todd for violations of the DCWPCL of back wages of $127,928.50, and liquidated damages equal to treble the amount of the unpaid wages, for a total damage claim of $511,714.

5.    Enter judgment for Mr. Arochi against all defendants for violation of the anti-retaliation provisions of the DCWPCL.

6.    Enter judgment for Mr. Arochi against Novak-Druce, Mr. Novak, Mr. Druce, Mr. Amernick and Mr. Todd, for fraud in the amount of $1,000,000 in compensatory damages, and $10,000,000 in punitive damages.

7.    Enter judgment for Mr. Arochi against Polsinelli as successor in interest for joint and several liability for unpaid wages and liquidated damages of $511,714.

8.    Enter judgment for Mr. Arochi against Novak-Druce, Mr. Novak, Mr. Druce, Mr. Amernick and Mr. Todd, for unjust enrichment.

9.    Award reasonable fees, all litigation costs, and enter judgment for reasonable attorneys' fees for each of Mr. Arochi's attorney, such fees to be determined under the Salazar Matrix.

10.    Award such other and further relief as the Court may deem just and appropriate.


Respectfully Submitted,


Dated: 3/26/2019                    /s/ John M. Clifford
                                    John M. Clifford, D.C. Bar No. 191866
                                    Clifford & Garde, LLP
                                    1850 M Street, NW, Suite 1060
                                    Washington, D.C. 20036
                                    Email: jclifford@cliffordgarde.com
                                    Telephone:  202-280-6115
                                    Fax: 202-289-8992


                                    /s/ C. Michael Tarone
                                    C. Michael Tarone, D.C. Bar No. 159228
                                    1850 M Street, NW, Suite 1060
                                    Washington, D.C. 20036
                                    Email: cmtaronelaw@hotmail.com
                                    Telephone:  301-233-4077


## JURY DEMAND

Pursuant to Federal Rules of Civil Procedure R. 38, plaintiff herein hereby demands a jury trial on all issues so triable.

                                    /s/ John M. Clifford
                                    _____
                                    John M. Clifford

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing Amended Complaint is being served on all counsel of record, via the Court's CM/ECF system.

/s/ John M. Clifford
John M. Clifford